IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF SEIZED ELECTRONIC DEVICES AND STORAGE MEDIA KNOWN AS:<br><br>IPHONE, MODEL A1524, CELLULAR TELEPHONE, BEARING IMEI NUMBER 354378061377976 | Case No. 15-SW-00143-SWH<br><br>**FILED UNDER SEAL** |

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

I, Justin H. Lewis, being duly sworn, state I am a United States Postal Inspector with the United States Postal Inspection Service. I have reason to believe that a IPHONE, MODEL A1524, CELLULAR TELEPHONE, BEARING IMEI NUMBER 354378061377976, which is further described in Attachment A, contains evidence, fruits, and instrumentalities of criminal offenses against the United States, namely, conspiracy to distribute and possess with intent to distribute cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846; distribution and possession with intent to distribute methamphetamine, in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and use of a telephone in furtherance of drug-trafficking crimes, in violation of 21 U.S.C. § 843(b). The facts to support a finding of probable cause are as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a United States Postal Inspector with the United States Postal Inspection Service, and have been so employed since August, 2002. I am currently assigned to the Kansas City Domicile of the Postal Inspection Service and have experience enforcing federal mail and drug laws. This affidavit is based on my own personal knowledge and information given to me by other Postal Inspectors and other law enforcement personnel.

2. I received basic training for approximately 12 weeks from the United States Postal Inspection Service regarding individuals using the United States Mail to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders to launder the proceeds of controlled substances. I received formal training for one week in March, 2003, when I attended the United States Postal Inspection Service Narcotics Training Course in San Diego, California. This training involved narcotic investigation techniques, chemical field testing, and training in the identification and detection of controlled substances and narcotic proceeds being transported in the United States Mail and other commercial carriers. As a United States Postal Inspector, I have been involved in over 150 illegal narcotic investigations involving the United States Mail and have been identified by the US Postal Inspection Service as a Subject Matter Expert (SME) in narcotic cases involving the United States Mail. I currently serve as an instructor at the week-long United States Postal Inspection Service Narcotics training course.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is identified in Attachment A and includes the following Device (hereinafter "the Device"):

> IPHONE, MODEL A1524, CELLULAR TELEPHONE, BEARING IMEI NUMBER 354378061377976.

The Device is currently located at the Kansas City, Missouri Police Department Interdiction Office, which is located in an undisclosed location in the Western District of Missouri.

5. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. I am submitting this affidavit in support of my belief that probable cause exists to believe that information to include incoming/outgoing text messages, incoming/outgoing/missed telephone calls, voice messages, photographs and videos, that will further identify the participants and scope of activity as it relates to the distribution of controlled substances, which are evidence, fruits, and instrumentalities of violations of federal law, including, but not limited to drug trafficking crimes in violation of 21 U.S.C. §§ 841(a)(1) and 846; distribution and possession with intent to distribute methamphetamine, in violation 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A); and use of a telephone in furtherance of drug-trafficking crimes, in violation of 21 U.S.C. § 843(b).

7. Based upon your Affiant's training, experience, and direct observations in this, and other investigations of criminal activity, as well as information received from other law enforcement officers involved in this and other investigations, I know:

    A. that persons involved in the distribution of controlled substances utilize telephones to conduct their illicit transactions. This would include contacting customers, sources of supply and those assisting in the distribution of controlled substances.

    B. that persons involved in the distribution of controlled substances commonly maintains the telephone contact lists or directories. These often include the names, nicknames, email addresses and contact numbers in the telephones of those involved in various roles of this illicit activity. These roles include but are not limited to customers, sources of supply, and those assisting in the distribution of controlled substances.

    C. that those involved in the distribution of controlled substances conduct their illicit trade via computer, internet and telephone in various forms to include but not limited to conversations, voice messages, text messages, instant messaging, video, and email messaging.

D. that persons involved in the distribution of controlled substances often take photographs of themselves with associates at all levels of the organization as well as photographs of them with narcotics and weapons.

E. that those involved in the distribution of controlled substances use and possess firearms to protect themselves, the illegal proceeds and the controlled substances from other seeking to harm or steal from them.

8. On May 1, 2015, while examining incoming Express Mail Parcels at the Kansas City, Missouri, Express Mail Unit, located at 300 W. Pershing Avenue, Kansas City, Missouri, I identified Express Mail Parcel EK785412825US, which contained the following suspicious characteristics similar to previous parcels known to contain illegal narcotics:

A. The Parcel originated from Mentone, California, which is a known illegal narcotic drug source area.

B. The Parcel had a hand written label.

C. The Parcel was a Priority Express Mail Parcel, which is an expedited overnight mailing service.

D. The Parcel was similar in size of previous seized US Mail parcels containing narcotics.

9. Express Mail Parcel EK785412825US was addressed to "The Johnson Family 7887 NW Roanridge Rd Apt G, Kansas City, MO 6151" and listed the sender information as "Lisa Johnson, 1795 Capri Ave, Mentone, CA 92359. "The 13 pound six ounce parcel was mailed on April 30, 2015, from Mentone, California. I entered the sender address of Lisa Johnson, 1795 Capri Ave, Mentone, CA 92359, in the Accurint Law Enforcement Database. The return address was valid, but the listed sender name of Lisa Johnson was not recognized to be associated to the address. The delivery address of "The Johnson Family, 7887 NW Roanridge Rd Apt G, Kansas City, MO 6151" was also entered in the Accurint Law Enforcement Database. The addressee name of Johnson was not recognized as being associated to the address. Per my training and experience, I understand drug traffickers often use fictitious names and addresses on

4

parcels containing narcotics in the attempt to hide the true identity of the mailer and intended recipient in case the parcel is discovered by law enforcement.

10. I contacted Kansas City, Missouri Police Department Detective Antonio Garcia and arranged for an exterior odor sniff of Priority Express Mail Parcel EK785412825US at the Kansas City, Missouri Grey Hound Bus Terminal located at 1101 Troost Avenue, Kansas City, Missouri, which is located in the Western District of Missouri. I placed the parcel in the storage room on a shelf located near other similar sized parcels and luggage. Detective Garcia and his certified narcotic canine, Zina, conducted a search of the area. I observed Zina sit and face Priority Express Mail Parcel EK785412825US, when it walked by. Detective Garcia stated Zina's actions indicated she had alerted to the parcel as containing a narcotic odor. I maintained custody of the parcel.

11. On May 1, 2015, at approximately 10:00 a.m., members of the Kansas City, Missouri Police Department Interdiction Unit (1840 Squad) and I made contact with Arnet Neely at 7887 NW Roanridge Road, Apt G, Kansas City, Missouri 64151. Mr. Neely stated he was watching his two newborn grandchildren. He is the father of Taylor Neely, who resides at the residence with her boyfriend, Nolan Johnson. Mr. Neely called Nolan Johnson, via phone number (573) 397-1177 and Detective Garcia spoke to him. Nolan Johnson gave consent to open the parcel over the phone. The parcel contained three individual boxes. One box contained two bundles of a white crystal type substance, which appeared to be methamphetamine. The other two boxes contained plastic containers with eight bundles of a green leafy substance, which appeared to be marijuana. Detective Garcia requested Nolan Johnson to come to the apartment.

12. Nolan Johnson responded to the apartment and we spoke to him in person. He claimed Charleston Leach had previously asked if a parcel could be sent to his address. Leach

5

told him it was presents for his daughters. Mr. Johnson showed the April 18, 2015 text he sent to Leach at (660) 412-2270 with his address. Mr. Johnson also showed me a text message he had received from Leach, from the same number, at approximately 9:11 a.m., on May 1, 2015, stating, "On my was to ur house bro to get my things thanks." Mr. Johnson then replied, "To my house." Leach then replied, "Yea boss, Yeah I got for my lil ones for they Family reunion coming through."

13. On May 1, 2015, at 11:25 a.m., Mr. Johnson agreed to send a text to Leach in which he texted, "Hey buddy I came home for lunch your package has arrived. I have to go back to work after a bit how long til you arrive?"

14. On May 1, 2015, at approximately 11:26 a.m., Mr. Johnson received a phone call from Leach. Mr. Johnson stated to Leach that he would be home for a bit and would wait for him to come and pick up the parcel. The phone call was then terminated; at which time Mr. Johnson stated that Leach was on his way and would arrive at approximately 2:00 to 2:30 p.m. Leach stated to Mr. Johnson that he would contact him thirty minutes prior to his arrival to pick up the parcel.

15. On May 1, 2015, at approximately 2:05 p.m., Leach contacted Mr. Johnson on his cell phone and stated that he was at the apartment complex. Mr. Johnson then directed Leach to his apartment.

16. It should be noted that members of the Kansas City, Missouri Police Department were outside the apartment conducting surveillance and Detectives Acton and Garcia, two members of the Kansas City, Missouri Tactical Unit and I were inside the apartment waiting for Leach to arrive. At approximately 2:08 p.m., Leach entered Mr. Johnson's apartment and took custody of the parcel in question, at which time members of the Kansas City, Missouri Tactical

6

Unit took Leach into custody without incident. Leach requested an attorney and declined an interview.

17. Leach had in his possession an iPhone, Model A1524, Cellular Telephone, bearing IMEI Number 354378061377976, in the apartment. I called phone number (660) 412-2270, which Mr. Johnson had been communicating with Leach and Leach's phone rang.

18. On May 4, 2015, I field-tested the white crystal substance and it field-tested positive as methamphetamine. Total weight of the two bundles was approximately 3 pounds 3.9 ounces. The green leafy substance was also field-tested and tested positive as marijuana. The total weight of the eight bundles was approximately two pounds 1.2 ounces.

19. Based upon the aforementioned facts, I believe the cellular phone recovered from Charleston Leach, iPhone, Model A1524, Cellular Telephone, bearing IMEI Number 354378061377976, contains information that will be fruits, evidence and/or instrumentalities of drug trafficking. I know that retrieving names and the respective phone numbers associated with them, would assist in further identifying relationships and identities of subjects associated with Charleston Leach and the investigation of this case. I know that subjects utilize cellular phones equipped with digital cameras and use such devices to photograph drugs and subjects possessing or "posing" with drugs. I know that subjects often photograph themselves and other subjects, and that these photographs can be sent and received electronically from cellular phone to cellular phone. I also know that subjects utilize mobile phones to communicate via text messaging. I know that subjects involved in the distribution of controlled substances often keep lists, ledgers, and records of their dealings. Based on my training and experience, examining data stored on cellular phones can uncover, among other things, evidence that reveals or suggests who

possessed or used the device, how the device was used, the purpose of its use, and when it was used.

20. Therefore, I believe probable cause exists for the issuance of a search warrant to search the iPhone, Model A1524, Cellular Telephone, bearing IMEI Number 354378061377976, for stored information as outlined in Attachment B, including owner information, names and telephone numbers, text and voice messages, photographs and videos, any stored history regarding in-coming, out-going, or missed calls, and other electronically stored media.

21. The Device is currently in the lawful possession of law enforcement. Therefore, while law enforcement might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws. The Device is currently in storage at the Kansas City, Missouri Police Interdiction Unit, located at an undisclosed location in the Western District of Missouri. In my training and experience, I know that the Device has been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of law enforcement.

## **TECHNICAL TERMS**

22. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Cellular Telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.

8

> These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

23. Based on my training, experience, and research, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.

25. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a device is evidence may depend on other

9

information stored on the device and the application of knowledge about how a device is used. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

        d.       Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

27.    *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## **CONCLUSION**

28. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

_____
Justin H. Lewis
United States Postal Inspector
United States Postal Inspection Service

Sworn to me and subscribed in my presence
on May __7th__ 2015, at Kansas City, Missouri.

_____
HONORABLE SARAH W. HAYS
Chief United States Magistrate Judge
Western District of Missouri

dab/sgs